1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    KATY CRUZ,                                    Case No.  1:21-cv-01248-AWI-HBK

12                 Plaintiff,                        FINDINGS AND RECOMMENDATIONS TO
                                                     DENY PLAINTIFF'S MOTION FOR
13            v.                                     SUMMARY JUDGMENT, GRANT
                                                     DEFENDANT'S CROSS MOTION FOR
14    KILOLO KIJAKAZI, ACTING                        SUMMARY JUDGMENT, AND AFFIRM
      COMMISSIONER OF SOCIAL                         THE DECISION OF THE COMMISSIONER
15    SECURITY,                                      OF SOCIAL SECURITY[1]

16                 Defendant.                        FOURTEEN-DAY OBJECTION PERIOD

17                                                   (Doc. Nos.  16, 18)

18

19           Katy Cruz ("Plaintiff") seeks judicial review of a final decision of the Commissioner of

20    Social Security ("Commissioner" or "Defendant") denying her application for supplemental

21    security income under the Social Security Act.  (Doc. No. 1).  The matter is currently before the

22    Court on the parties' briefs, which were submitted without oral argument.  (Doc. Nos. 16, 18-19).

23    For the reasons set forth more fully below, the undersigned recommends the district court grant

24    Defendant's cross motion for summary judgment, deny Plaintiff's motion for summary judgment,

25    and affirm the Commissioner's decision.

26           ////

27    _____
      [1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302
28    (E.D. Cal. 2022).

# I.      JURISDICTION

Plaintiff filed for supplemental security income on December 5, 2018, alleging a disability onset date of June 1, 2017.  (AR 222-42).  Benefits were denied initially (AR 123-28) and upon reconsideration (AR 130-35).  A hearing was conducted before an Administrative Law Judge ("ALJ") on January 14, 2021.  (AR 52-81).  Plaintiff was represented by counsel and testified at the hearing.  (*Id*.).  On February 10, 2021, the ALJ issued an unfavorable decision (AR 32-51), and on June 17, 2021, the Appeals Council denied review.  (AR 1-6).  The matter is now before this Court pursuant to 42 U.S.C. § 1383(c)(3).

# II.      BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner.  Only the most pertinent facts are summarized here.

Plaintiff was 38 years old at the time of the hearing.  (*See* AR 279).  She completed high school and two years of college.  (AR 58, 283).  Plaintiff testified that she lived with her mother-in-law, father-in-law, husband, and five-year old son.  (AR 57).  Plaintiff has work history as a teacher aide and an office clerk.  (AR 67-68, 77-78).  Plaintiff testified that she has shooting pains along her legs and back pain.  (AR 76).  She reported she can lift 20 pounds "once in a while," walk for 30 minutes to an hour, stand for 20-30 minutes at a time, and sit for "a little bit longer" than 20 to 30 minutes.  (AR 60-61).  Plaintiff testified that she has to lie down two to four hours a day, and she has to take breaks.  (AR 62).  She does not have difficulty getting along with other people, but she has anxiety around large groups of people and people she does not know.  (AR 64).  She testified that her bipolar disorder causes her to have episodes of mania for several days at a time, several times a month.  (AR 69-70). Plaintiff testified that she experiences periods of depression, and had an episode of suicidal ideation within six months of the hearing.  (AR 70-72).

# III.      STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or

1   is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial

2   evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a

3   conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence

4   equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

5   citation omitted). In determining whether the standard has been satisfied, a reviewing court must

6   consider the entire record as a whole rather than searching for supporting evidence in isolation.

7   *Id.*

8          In reviewing a denial of benefits, a district court may not substitute its judgment for that of

9   the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible

10  to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.

11  2008). Further, a district court will not reverse an ALJ's decision on account of an error that is

12  harmless. *Id.* An error is harmless where it is "inconsequential to the [ALJ's] ultimate

13  nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's

14  decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556

15  U.S. 396, 409-10 (2009).

16                        **IV.    SEQUENTIAL EVALUATION PROCESS**

17         A claimant must satisfy two conditions to be considered "disabled" within the meaning of

18  the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful

19  activity by reason of any medically determinable physical or mental impairment which can be

20  expected to result in death or which has lasted or can be expected to last for a continuous period

21  of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment

22  must be "of such severity that he is not only unable to do his previous work[,] but cannot,

23  considering his age, education, and work experience, engage in any other kind of substantial

24  gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

25         The Commissioner has established a five-step sequential analysis to determine whether a

26  claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the

27  Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the

28  claimant is engaged in "substantial gainful activity," the Commissioner must find that the

claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must

4

1  find that the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of

2  adjusting to other work, analysis concludes with a finding that the claimant is disabled and is

3  therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

4       The claimant bears the burden of proof at steps one through four above.  *Tackett v. Apfel*,

5  180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the

6  Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such

7  work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran*

8  *v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

9  **V.    ALJ'S FINDINGS**

10       At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity

11  since December 5, 2018, the application date.  (AR 37).  At step two, the ALJ found that Plaintiff

12  has the following severe impairments: degenerative disc disease, obesity, bipolar disorder, and

13  anxiety.  (AR 37).  At step three, the ALJ found that Plaintiff does not have an impairment or

14  combination of impairments that meets or medically equals the severity of a listed impairment.

15  (AR 37).  The ALJ then found that Plaintiff has the RFC:

16  
17  
18  
19  
20  

> to perform light work as defined in 20 CFR 416.967(b) with occasionally lifting 20 pounds and frequently lifting 10 pounds.  She can stand, walk, and sit six hours each in an eight-hour workday with normally given work breaks.  She can frequently balance, stoop, kneel, crouch, and crawl.  There are no manipulative limitations.  She can interact appropriately with coworkers, supervisors, and the public on a brief and occasional basis.  She should be allowed to complete her tasks independently.  She would be able to perform at least simple, routine, repetitive work.  She can sustain a routine and maintain attendance.

21  

22  (AR 39).  At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.

23  (AR 44).  At step five, the ALJ found that considering Plaintiff's age, education, work

24  experience, and RFC, there are jobs that exist in significant numbers in the national economy that

25  Plaintiff can perform, including sewing machine operator, bakery worker conveyer line, and

26  photocopy machine operator.  (AR 44-45).  On that basis, the ALJ concluded that Plaintiff has not

27  been under a disability, as defined in the Social Security Act, since December 5, 2018, the date

28  the application was filed.  (AR 45).

5

## VI.    ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act.  (Doc. No. 1). Plaintiff raises the following issue for this Court's review: whether the ALJ properly weighed the medical opinion evidence.  (Doc. No. 16 at 10-13).

## VII.    DISCUSSION

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence.  *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…"  *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. § 404.1520c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources.  20 C.F.R. § 404.1520c(a) and (b).  The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements").  20 C.F.R. § 404.1520c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered.  20 C.F.R. § 404.1520c(b)(2). Supportability and consistency are explained in the regulations:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior

administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2).  The ALJ may, but is not required to, explain how the other factors were considered.  20 C.F.R. § 404.1520c(b)(2).  However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. § 404.1520c(b)(3).

The Ninth Circuit has additionally held that the new regulatory framework displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining doctor's opinion.  *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).  Nonetheless, in rejecting an examining or treating doctor's opinion as unsupported or inconsistent, an ALJ must still provide an explanation supported by substantial evidence.  *Id.* at 792.  This means that the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings."  *Id.* (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

## A. Bounmee Vang, FNPC and Timothy Atmajian, M.D.

In April 2019, Bounmee Vang, FNPC and Timothy Atmajian, M.D.[2] opined that Plaintiff was able to work for four hours per day; occasionally lift and carry 10 pounds; never stoop; occasionally climb, balance, kneel, crouch, crawl, or reach in any direction; stand/walk for 0-2 hours at one time in an 8-hour workday; stand/walk for 2-4 hours total in an 8-hour workday; sit for 0-2 hours at one time in an 8-hour workday; and sit for 2-4 hours total in an 8-hour workday.  (AR 449-51).  The ALJ found these opinions were not persuasive.  (AR 42).

First, as to supportability factor, the ALJ noted that the opinions were not supported by

---

[2] As noted by Defendant, Plaintiff mischaracterizes Dr. Atmajian's opinion as limitations assessed by Ms. Vang.  (*See* AR 449-451).  "However, this does not affect the analysis of these opinion[s] because the ALJ discussed the findings together."  (AR 42-43).

1   citation to any objective medical evidence.  (*Id.*).  Plaintiff argues this reason is not supported by

2   substantial evidence because "[w]hile FNP Vang did not offer a supporting explanation, her

3   opinion was submitted with primary care treatment records and labs supporting her assessments."

4   (Doc. No. 16 at 10).  Defendant contends that "this requires the Court to speculate as to what

5   evidence Ms. Vang and Dr. Atmajian relied on when they prepared their check box

6   questionnaires.  This is significant because the examination findings . . . were inconsistent with

7   such extreme and dramatic limitations."  (Doc. No. 18 at 6).  The Court agrees.  Under the new

8   regulations, "the more relevant the objective medical evidence and supporting explanations

9   presented by a medical source are to support" the medical opinion, the more persuasive the

10  medical opinion will be.  20 C.F.R. § 404.1520c(c)(1).  Here, it is undisputed that the opinions of

11  Ms. Vang and Dr. Atmajian do not include any supporting explanation; thus, it was reasonable for

12  the ALJ to find them was less persuasive.  (*See* Doc. 16 at 12 ("FPP Vang did not offer a

13  supporting explanation")).  The Ninth Circuit has held that when a treating physician's check-box

14  opinion was "based on significant experience with [Plaintiff] and supported by numerous records,

15  [it was] therefore entitled to weight that an otherwise unsupported and unexplained check-box

16  form would not merit."  *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014).  However, the

17  treatment notes from Ms. Vang cited by Plaintiff in support of this argument consist of six single-

18  page "progress notes" over the time period of October 2018 to May 2019, and lab results from

19  April 2019, offered without further explanation.  Taken together, these treatment notes do not rise

20  to the level of a "significant" experience with Plaintiff that "was supported by numerous records."

21  (AR 438-48).  Moreover, the Court's review of the treatment notes cited by Plaintiff does not

22  provide any arguable explanation of the bases for the severe limitations assessed by Ms. Vang

23  and Dr. Atmajian in the check-box opinion.  Based on the foregoing, the Court finds no error in

24  the ALJ's assessment of the supportability factor.

25      Second, as to the consistency factor, the ALJ found the opinions inconsistent with

26  objective medical evidence in the record "including observations of normal dorsolumbar range of

27  motion, full strength in the claimant's extremities, normal gait, and negative straight leg raise

28  testing."  (AR 43 (citing AR 530-33, 565, 652, 717)).  Plaintiff argues the ALJ "cherry-pick[ed]

1    the record for facts that align with her conclusion while ignoring evidence favorable to" Plaintiff.

2    (Doc. No. 16 at 12).  In support of this argument, Plaintiff cites evidence of decreased range of

3    motion in the cervical and lumbar spine, "abnormal sensation" in the bilateral L2, L3, L4, and L5

4    dermatomes, positive straight leg raise testing, positive slump test, positive Patrick test and

5    reverse Thomas test, reduced strength for ankle dorsiflexion and hip abduction, and pain to

6    palpitation of the lumbar facet joints.  (*Id*. at 12-13 (citing AR 561, 566, 577, 581, 592, 596, 599-

7    600, 605-06, 613)).

8         Even under the new regulations, the ALJ may not "cherry-pick" evidence in discounting a

9    medical opinion.  *See Carrie R. v. Comm'r Soc. Sec. Admin*., 2022 WL 35777, at *4 (D. Or. Jan.

10   4, 2022) (noting that "the new regulations did not, however, upend the Ninth Circuit's entire body

11   of caselaw relating to medical evidence, which remains binding on this Court.  For example, it

12   remains true that ALJs may not cherry-pick evidence in discounting a medical opinion.") (citing

13   *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014)); *Timothy P. v. Comm'r Soc. Sec. Admin*.,

14   2022 WL 2116099, at *9 (D. Or. June 13, 2022) ("Although *Woods* made it clear that the

15   hierarchy among physicians' opinions no longer applies in this Circuit, the court did not address

16   whether the new regulations upend the entire body of caselaw relating to medical evidence… It

17   remains true that the ALJs may not cherry-pick evidence in discounting a medical opinion.").

18   However, as part of the summary of medical evidence in the decision, the ALJ did review

19   "objective findings, diagnostic studies, treatment modalities, and the treatment record as a

20   whole," including ongoing evidence of pain and tenderness during treatment visits, as cited in her

21   opening brief, that could be considered favorable to Plaintiff.  (*See* AR 40 (citing 438 (back

22   tenderness and epidural injections noted), 461 (x-ray of lumbar spine noting mild disc space

23   narrowing at L5-S1), 561-62 (lumbar pain with range of motion testing and palpation), 566

24   (lumbar pain with range of motion testing and palpation), 592-93 (lumbar pain with range of

25   motion testing and palpation), 596-97 (lumbar pain with range of motion testing and palpation),

26   603 (treated with lumbar medal branch blocks), 609 (treated with transforaminal epidural

27   injections), 711 (low back tenderness)).  Thus, when viewing the medical record as a whole, it

28   was reasonable for the ALJ to conclude that the severity of limitations assessed by Ms. Vang and

1    Dr. Atmajian's opinions were not consistent with objective medical evidence in the record.

2           Plaintiff additionally argues that the ALJ's "assertion that that the objective findings

3    showed normal strength and range of motion, and negative straight leg raising, are flatly

4    contradicted by Plaintiff's treatment records." (Doc. No. 16 at 13).  However, as noted by

5    Defendant, the longitudinal record indicates that Plaintiff consistently presented with full or

6    nearly full strength, normal gait, normal lumbar range of motion, and negative straight leg raise

7    testing.  (Doc. No. 18 at 7 (citing AR 43, 407, 414, 488, 492, 501, 506, 519, 521, 531-32, 561,

8    565-66, 572-73, 577-78, 580-81, 586-87, 592, 596, 600, 606, 613, 620-21, 652, 658, 663, 676,

9    717, 763).  "Where the evidence is susceptible to more than one rational interpretation, it is the

10   ALJ's conclusion that must be upheld.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005);

11   *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (ALJ is responsible for reviewing the

12   evidence and resolving conflicts or ambiguities in testimony).  For all of these reasons, and

13   regardless of evidence that could be considered favorable to Plaintiff, the ALJ's finding that Ms.

14   Vang and Dr. Atmajian's opinions were inconsistent with the objective medical evidence of

15   record was supported by substantial evidence.

16          After viewing the ALJ's reasoning in light of the record as a whole, the Court concludes

17   that the ALJ's finding that the opinions of Ms. Vang and Dr. Atmajian's were not persuasive was

18   supported by substantial evidence after proper consideration of the supportability and consistency

19   factors.

20      **B.  Pauline Bonilla, Psy.D.**

21          In June 2019, consultative examiner Dr. Pauline Bonilla conducted a mental evaluation of

22   Plaintiff, including a clinical interview and mental status examination.  (AR 453-59).  She opined

23   that Plaintiff's ability to perform simple and repetitive tasks was mildly impaired; her ability to

24   perform detailed and complex tasks was moderately impaired; her ability to accept instructions

25   from supervisors was mildly impaired; her ability to interact with co-workers and the public is

26   moderately impaired; her ability to sustain an ordinary routine without special supervision is

27   mildly impaired; her ability to maintain regular attendance in the workplace is mildly impaired;

28   her ability to complete a normal workday/work week without interruptions from a psychiatric

                                                        10

condition is moderately impaired; her ability to deal with stress and changes encountered in the workplace is moderately impaired; and the likelihood of Plaintiff emotionally deteriorating in a work environment is moderate.  (AR 457-58).  The ALJ found Dr. Bonilla's opinion was partially persuasive.  (AR 43).  More specifically, the ALJ noted that while Dr. Bonilla found Plaintiff has moderate limitations in interacting with others and in concentrating, persisting, and maintaining pace, "Dr. Bonilla's opinions are vague as she did not provide an opinion regarding [Plaintiff's] specific work-related limitations.  Further, Dr. Bonilla's opinions regarding [Plaintiff's] ability to deal with stress and changes encountered in the workplace and to complete a normal workday/workweek without interruptions from a psychiatric condition are overly restrictive and inconsistent with Dr. Bonilla's observations during the consultative examination."  (AR 43-44).

Thus, as to the supportability factor, the ALJ noted that Dr. Bonilla's opinion was inconsistent with her examination observations that Plaintiff had normal insight, judgment, and concentration; had appropriate thought process; and denied suicidal ideation.  (AR 44).  As above, Plaintiff argues that the ALJ "cherry-picked the facts consistent with her conclusion and ignored the evidence that supported Dr. Bonilla's opinion" such as Dr. Bonilla's observations that Plaintiff had dysphoric mood, and an inability to perform simple math calculations and serial 3's.  (Doc. No. 16 at 13 (citing AR 456)).  However, a review of the ALJ's decision reveals that she did consider Dr. Bonilla's examination findings, including her observation that Plaintiff's mood was dysphoric.  (AR 41).  Moreover, Dr. Bonilla's mental status examination findings included observations that Plaintiff was cooperative and pleasant; stream of mental activity was within normal limits; speech was logical and coherent; thought content was appropriate; she reported dysphoric mood but also denied suicidal ideation; intellectual functioning was within average range; remote memory was intact; fund of knowledge was consistent with Plaintiff's education level; she had "some" difficulty performing simple math calculations; concentration was within normal limits including the ability to perform a simple three-step command; abstract thinking was within normal limits; and judgment and insight were within normal limits.  (AR 455-56).  Thus, as to the supportability factor, the ALJ's finding that Dr. Bonilla's opinion was less persuasive because it was not consistent with her own largely benign mental status examination findings is

11

1    supported by substantial evidence.

2         As to the consistency factor, the ALJ found the above-identified portion of Dr. Bonilla's

3    opinion related to stress and changes in the workplace and Plaintiff's ability to complete a normal

4    workday/workweek without interruptions was inconsistent with normal findings on mental status

5    examinations throughout the record, including "that she had good insight, unimpaired judgment,

6    and coherent, relevant, and logical thought process.  The claimant was also in no acute distress

7    and had normal behavior."  (AR 44 (citing 488, 532, 652, 717-18, 732, 763).  Plaintiff generally

8    argues the ALJ erred by "failing to acknowledge" that the opinion was supported by the

9    longitudinal record, and by failing to articulate how she considered the consistency factor.  (Doc.

10   No. 16 at 13).  However, aside from the observations by Dr. Bonilla regarding Plaintiff's

11   dysphoric mood and inability to perform simple math calculations, Plaintiff fails to specifically

12   identify any objective evidence in the longitudinal record consistent with this portion of Dr.

13   Bonilla's opinion.  The ALJ's finding that this portion of Dr. Bonilla's opinion is not consistent

14   with the normal mental status examinations throughout the overall medical record is supported by

15   substantial evidence. *See Burch*, 400 F.3d at 679.

16        The Court finds the ALJ's conclusion that Dr. Bonilla's opinion was only partially

17   persuasive was supported by substantial evidence after consideration of the supportability and

18   consistency factors.

19                              **VIII.   CONCLUSION**

20        A reviewing court should not substitute its assessment of the evidence for the ALJ's.

21   *Tackett*, 180 F.3d at 1098.  To the contrary, a reviewing court must defer to an ALJ's assessment

22   as long as it is supported by substantial evidence.  42 U.S.C. § 405(g).  As discussed in detail

23   above, the ALJ properly considered medical opinion evidence.  After review, the Court finds the

24   ALJ's decision is supported by substantial evidence and free of harmful legal error.

25        Accordingly, it is **RECOMMENDED**:

26        1.      Plaintiff's Motion for Summary Judgment (Doc. No. 16) be DENIED.

27        2.      Defendant's Cross Motion for Summary Judgment (Doc. No. 18) be GRANTED.

28        3.      The district court AFFIRM the decision of the Commissioner of Social Security

for the reasons set forth above.

4.    The district court direct the Clerk to enter judgment in favor of the Commissioner of Social Security, terminate any pending motions/deadlines, and close this case.

**NOTICE TO PARTIES**

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen (14) days after being served with these findings and recommendations, a party may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).


Dated:    February 1, 2023

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE